Earnest P. BAILEY, Petitioner,

v.

METROPOLITAN PAVING CO., American Mutual Liability Ins. Co., and State Industrial Court, Respondents.

No. 42200.

Supreme Court of Oklahoma.

April 9, 1968.

Claude S. Woody, Jr., and West, Procter & Moore, Oklahoma City, for petitioner.

Gene H. Hemry, Hemry & Hemry, Henry F. Featherly, Oklahoma City, Charles R. Nesbitt, Atty. Gen., for respondents.

WILLIAMS, Justice.

There is involved here for review an order of the State Industrial Court, sitting en banc, affirming an order of the trial judge denying the claim of the petitioner, claimant below, for compensation against the respondents. Parties will be referred to as they appeared before the State Industrial Court.

Claimant in his Form 3, filed on January 28, 1966, as amended by his evidence, alleges that on or about November 24, 1965, while working as a heavy equipment operator for respondent Metropolitan Paving Company on a project at Will Rogers Field, Oklahoma County, he inhaled lime dust causing him to sustain lung congestion and a possible heart condition. Respondent in its answer denied the claim. ·

Summarized, the facts developed at the hearing before the trial judge are as follows:

Claimant testified that on November 24, 1965, he was working on the job operating a Kompactor roller. No lime was unloaded or spread on that date. A workman operating a vehicle drove up to where claimant was working and fogged up the dust. He breathed dust during the day and had breathed dust on previous occasions. He worked about ten hours on November 24th and went home. He had trouble with breathing during the night, also during the nights of November 25th and 26th.

About 11 P.M. on the night of November 26th, claimant went to St. Anthony Hospital and was admitted to the emergency room. X-rays and an electrocardiogram were made. Claimant testified that a hospital attendant told him, "Boy there is nothing wrong with your old ticker. You have a little high blood pressure but there is nothing the matter with your ticker." The attendant told him that his lungs were cloudy and there was something wrong with his lungs. The attendant suggested that he see an internist but he "did not want an intern fooling with" him. He remained at the hospital about two hours and went home.

Claimant returned to the job on November 29th but did not work. He told the foreman that he was going to see a doctor but did not request the foreman to send him to a doctor. Claimant saw Dr. P on November 30, 1965, and on other occasions during the next few months. He returned to work on December 1, 1965, and continued working until December 16, 1965,

when he was dismissed apparently because there was no further need for his services.

Employees working for the respondent testified that in carrying out the project of building an apron for the airfield the land is first processed, then a trucking company distributes lime over the area. This work is done by an independent trucking company and neither claimant nor any other employee of the respondent had anything to do with the liming process. After the lime had been distributed it was wetted down with water until there was about four inches of water standing on the lime bed. The liming process was done about 4:30 in the afternoon or 3:30 in the morning when the employees are not present. Some dust occurs during the liming process but respondent's employees have nothing to do with it. The foreman testified that claimant told him he was having difficulty breathing but did not complain of dust bothering his lungs.

Claimant offered the testimony of Dr. P who first examined the claimant at latter's request on November 30, 1965. He testified that on the first examination claimant appeared short of breath. His blood pressure was 210/130. His heart rate was regular 108 beats per minute with no murmurs. His lungs were clear except moist rales at both lung bases. He made x-rays and an electrocardiogram. He felt that claimant's principal problem was "hypertension and hypertensive failure." He treated claimant for congestive heart failure recommending the use of digitalis and diuretic drugs for high blood pressure and rest at home. Dr. P treated the claimant on several occasions during the next few months. On December 4, 1965, claimant's heart rate had reduced to 80 beats per minute and his blood pressure had dropped to 160/100. Claimant had had "no recurrence of the smothering spells and trouble breathing at night." Dr. P testified that at the conclusion of his treatment claimant's heart had been reduced to normal in size and his blood pressure to the upper limits

of normal 150/90. Dr. P found claimant to have a hypertensive vascular disease which existed before his being exposed to dust. He testified that the cough and strain on claimant's respiratory tract could cause a congestive heart attack.

Dr. M examined the claimant on March 4, 1966, at the request of the respondent. Dr. M found the claimant to have arteriosclerotic heart disease but further found that there is no causal relation between the arteriosclerotic heart disease with coronary sclerosis and the lime inhalations alleged by the claimant to have occurred while he was working. Dr. M further found no evidence of damage to claimant's lungs resulting from his alleged inhalation of lime dust. He stated that a heart failure could be precipitated by a congested lung condition.

Dr. M found claimant's heart condition to cause a slight limitation of his physical activities and to require a discontinuance of strenuous activities.

We have reviewed the evidence. The evidence both lay and medical sustains the decision of the trial judge holding "that claimant did not sustain an accidental personal injury arising out of and in the course of his hazardous employment with respondent."

We have held in many cases that where the evidence presented to the State Industrial Court is sufficiently plain and explicit to sustain the conclusions reached by the State Industrial Court its decision will not be disturbed by this Court on appeal. Lee Way Motor Freight, Inc. v. Highfill, Okl., 429 P.2d 745; Flint Construction Company v. Woods, Okl., 425 P.2d 995; Griffin v. Flint Steel Corporation, Okl., 405 P.2d 63; Sunray Mid-Continent Oil Company v. Hoover, Okl., 360 P.2d 710.

Petitioner contends that the order of the State Industrial Court denying compensation is too indefinite to be capable of judicial interpretation.

The order of the trial judge approved by the State Industrial Court sitting en banc reads as follows:

"That claimant did not sustain an accidental personal injury arising out of and in the course of his hazardous employment with respondent as alleged in his form 3, and claimant's claim should be denied.

"IT IS THEREFORE ORDERED that claimant's claim is denied."

The decisive issue in the trial court was whether claimant had shown that he sustained an accidental personal injury by reason of breathing lime particles. Under analogous circumstances, we have approved orders identical with the above order as being sufficiently definite to apprise the claimant of the reasons for denying his claim. Howland v. Douglas Aircraft Company, Okl., 438 P.2d 5; Griffin v. Flint Steel Corporation, Okl., 405 P.2d 63; McMurtrey v. American Ass'n of Petroleum Geologists, Okl., 383 P.2d 215, 216. There is no error here.

The award of the State Industrial Court is sustained.

All the Justices concur.