**SOONER CONSTRUCTION COMPANY and Transportation Insurance Company, Petitioner,**

**v.**

**Frances BROWN, widow, In the Matter of the Death of Cecil E. Brown, Respondent.**

**No. 47639.**

Supreme Court of Oklahoma.

Dec. 23, 1975.

John S. Oldfield, Jr., of Pierce, Couch, Hendrickson & Short, Oklahoma City, for petitioner.

R. A. Bell, Dick Bell, Frank Seay, Seminole, for respondent.

SIMMS, Justice:

On September 30, 1970, during employment with Sooner Construction Company, hereafter Respondent, Cecil E. Brown became ill, quit work, and went home and to bed. The next day his wife, claimant herein, took him to the family physician, who recommended hospitalization. Brown was placed in the intensive care unit of an Oklahoma City hospital, where he expired October 16, 1970, from bilateral pneumonia resulting from chronic obstructive pulmonary disease.

Form 3–A alleged death resulted from heart strain, induced by strain and exertion, and claimant's entitlement to death benefits as surviving widow and sole dependent of deceased workman. After hearing a trial judge entered an order finding matters summarized below.

Deceased was hired by Respondent on April 1, 1970. Prior to, and during employment, deceased was afflicted by several diseases, including obstructive pulmonary disease, heart condition and anemia. During employment deceased was subjected to dusty working conditions which aggravated pulmonary condition, was required to climb a steep grade and stairs in performing duties, and also was required to sweep out the work area. The lung condition combined with dusty conditions to lower oxygen supply, caused enlargement of deceased's heart, kidney dysfunction, severe heart congestive heart failure, uremia and anemia. Strain and exertion to which de-

ceased was subjected, aggravated and exacerbated condition of heart and lungs and hastened deceased's death, which was causally connected with strain, exertion and working conditions. This finding was basis for award of death benefits to claimant as surviving heir suffering pecuniary loss.

Respondents have petitioned for review and vacation of this order, alleging: (1) insufficiency of evidence to sustain the order and lack of evidence to establish work related accident; (2) the hypothetical question propounded claimant's doctor was based upon facts not conforming to testimony, and which were improperly admitted into evidence under hearsay rule; (3) pecuniary loss upon which to base claim for death benefits was not shown.

■ It is apparent each ground of argument rests upon evidentiary considerations. Settled law declares determination of fact questions is for the State Industrial Court, and on review Supreme Court will not weigh conflicting evidence to determine preponderance thereof, but will examine the record only to ascertain whether findings are supported by any reasonable competent evidence. *Goombi v. Trent,* Okl., 531 P.2d 1363 (1975); *Meadow Gold Dairies v. Oliver,* Okl., 535 P.2d 290 (1975).

Deceased was 61 years old when employed without physical examination as a scaleman at Respondent's plant. Deceased had suffered a heart condition for nine years, which required treatment and daily medication, and also was afflicted with bronchitis, emphysema, and had undergone radioactive treatment for polycythemia. The work involved weighing cement trucks and keeping a log, making weight tickets and handing a copy to each driver through an open window. There was gravel and dirt outside the scale house, which contributed to dusty conditions. At days end, deceased had to walk approximately 100 feet down an incline and climb five steep steps into the plant office to deliver these weight tickets. When returning to the scale house deceased would have to stop and rest, and would be out of breath on arrival. A co-

employee knew deceased was in bad health and necessity for walking from the office to a parked car was a burden. Coughing attacks, which occurred as often as three times each day, necessitated complete work stoppage until each episode subsided.

Evidence as to whether the office was air-conditioned was conflicting, although it appeared windows were kept open to facilitate handing tickets to drivers. The other employee was not bothered by conditions because he was accustomed to working under windy and dusty conditions. Whether deceased swept out the dusty office was disputed. The co-employee testified to performing this task because deceased lacked the energy. Claimant testified she had gone to the plant on occasion to clean the office, or to assist deceased who had difficulty doing this because of his breathing.

On September 30, 1970, deceased became ill and went home and to bed. Claimant returned home from her employment about 11:30 P.M. and found him asleep. The next morning deceased arose and went to the bathroom, then returned and sat on the bed holding his chest and complaining of pain, stating his chest had been hurting for two days, after having swept the office. Claimant took her husband to the doctor, after which he was hospitalized and eventually expired.

■ Respondents contend there is a lack of evidence to sustain this order, or to show deceased suffered a work related accident. It is urged deceased was in poor health and no evidence showed his debilities either were work connected, initially caused by Respondent, or aggravated by employment with Respondent. It is also asserted no evidence showed the heart strain and lung condition, which caused death, either arose out of or was aggravated during employment. Rather, it is contended the evidence simply showed continuation of a former disability which caused death when deceased happened to be working for Respondent, and since deceased had a history of coronary difficulty and no an-

tecedent strain was shown, the evidence fairly reflects death resulted in a natural chain of events, and was not work connected. Thus, under rules stated in *Fisher v. Douglas Aircraft Co.,* Okl., 440 P.2d 708 (1968), and similar decisions, the order now reviewed must be vacated for lack of competent evidence.

This argument was considered and rejected in *H. J. Jeffries Truck Line v. Grisham,* Okl., 397 P.2d 637, 641 (1964), by this reasoning:

" * * * This, of course, is a misconception. The impact of a strain develops from an interplay of multitude of variable factors which depend largely on the individual reaction of a given human organism to the physical forces in action. Strain or overexertion relates exclusively to the person injured. As applied to that person, its principal ingredient is unusual effect rather than unusual cause. If, because of some pre-existing underlying weakness, an employee reaches a breaking point under the stress of ordinary work, for that individiual the break is nonetheless the result of overexertion. It is so because the individual's organism did give way under its force. The break is deemed the accident—the fortutious and unexpected event. This point may be reached through the cumulative effect of each day's strain. Separately one day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force."

\* \* \* \* \* \*

" * * * It was sufficient to show factually and medically that there was a causal relation between the heart attack and the sum total of claimant's antecedent efforts of labor which for him must be deemed 'unusual' or stressful."

This determination was reiterated in *Black, Sivalls & Bryson, Inc. v. Bass,* Okl., 506 P.2d 902 (1973). Most recently in *Meadow Gold Dairies v. Oliver,* Okl., 535 P.2d 290 (1975), we again declined to accept this argument, pointing out the issue whether death resulted from heart disease, or was precipitated by cumulative effect of series of episodes of strain, under circumstances related in *Grisham, supra,* was a question of fact for State Industrial Court determination.

Neither Respondent's argument nor supporting authorities present grounds for applying principles contrary to those stated above. For this reason it is unnecessary to discuss other decisions offered in support of Respondent's argument, particularly the decision in *Ideal Cement Co. v. State Industrial Court,* Okl., 486 P.2d 712 (1971), cited as authority for the claim the present case lacks showing of causal connection.

■ The second contention attacks propriety of a hypothetical question posed to claimant's physician as basis for expression of expert opinion concerning cause of death.

One argument insists certain facts included in the hypothetical question were inaccurate. The question presented the physician included matters relative to the building not being air-conditioned; necessity for keeping a window open; that interior of the office would be covered with dust from sand and dirt blowing through the building, and that deceased had to regularly sweep out the building. These matters are categorized as uncertain and unproven and therefore improperly included in hypothetical recitation because inaccurate.

■ Basis of the complaint rests on the fact Respondent's witness, the co-employee who worked with deceased in the scale office, gave conflicting testimony concerning some of these matters. Respondents argue this contradictory testimony raises doubt as to validity of the hypothetical question, since the fellow employee's knowledge of working conditions recognizably was greater than claimant's knowledge. Therefore, the hypothetical question did not conform to facts actually proved. The conclusion reached from this argument is non sequitur. To accord validity to this argument simply would declare conflicting testimony could not be included in factual recitation of a hypothetical question. This clearly would destroy the rule which accords verity to

hypothetical questions which incorporate facts a party's proof fairly tends to establish and are consistent therewith. *Meadow Gold Dairies v. Oliver, supra; Black, Sivalls & Bryson, Inc. v. Story,* Okl., 378 P.2d 764 (1963).

■ Extended argument relative to nature and quality of claimant's evidence insists reversible error resulted from admission of testimony relating deceased's statements concerning chest pain, which had existed for two days after deceased swept out the office. Summarized, Respondents argue deceased's statements were not spontaneous utterances and were inadmissible because: (1) death did not occur until 15 days after statements were made; (2) statements were not made in course of the event or transaction which caused death; (3) statements were not contemporaneous with alleged heart strain. Respondents assert these deficiencies, measured by considerations applied in decisions such as *Gulf Oil Co. v. Harris,* Okl., 425 P.2d 957 (1967); *Allen v. Grubb,* Okl., 442 P.2d 492 (1968), and *Silver Seal Products Co. v. Owens,* Okl., 523 P.2d 1091 (1974), conclusively show inadmissibility of the questioned evidence.

Initially, it is noted all decisions cited by Respondents except the *Owens case, supra,* involved admissibility of statements which were considered as made spontaneously because provoked by suffering while in a state of shock. In *Owens, supra,* we overruled the reasoning and cases which had engrafted "shock" as a principle element involved in considering admissibility of res gestae statements.

In *Sand Springs Ry. Co. v. Pigee,* 196 Okl. 136, 163 P.2d 545 (1945), res gestae statements were held admissible when the following factors were present: (1) made at or near time of occurrence; (2) spontaneously made; (3) provoked or influenced by happening of the accident itself so as to become part thereof. And, further, we adopted the principle that spontaneous or instinctive utterances, made under circumstances calculated to provide a degree of trustworthiness, are entitled to some credit independent of the declaration.

■ Respondents' three stated reasons for claiming inadmissibility of claimant's testimony each concerns the element of time involved between the event and deceased's later expression relative to the reason therefor. As pointed out in Wigmore on Evidence (3rd Ed.) §§ 1749, 1750, better reasoning declares time of utterance is simply an element for consideration. There can be no definite and fixed limitation of time, and no rule can be formulated to determine how near in point of time declarations must be contemporaneous with the main fact. The ultimate test is spontaneity and logical reaction to the main event, and this principle has been recognized since *Herring, et al., v. Hood,* 55 Okl. 737, 155 P. 253 (1916).

■ Questions as to admissibility of statements as part of res gestae generally is determined from facts and circumstances of the particular case, and in great measure should be left to determination of the trial court. *Margay Oil Corp. v. Jamison,* 177 Okl. 433, 59 P.2d 790 (1936). The trial court was correct in admitting the questioned testimony.

■■ The final contention is that there can be no recovery of death benefits under 85 O.S.1971, § 1 et seq., by a claimant who has not suffered pecuniary loss. This argument was considered most recently in *Meadow Gold Dairies v. Oliver, supra.* Therein we pointed out the right to claim death benefits depends upon proof of heirship, and showing of pecuniary loss. The amount of pecuniary loss is not significant, and whether pecuniary loss has been occasioned by death is a question of fact for the State Industrial Court determination. There was evidence from which the court could determine existence of pecuniary loss.

WILLIAMS, C. J., and DAVISON, LAVENDER, DOOLIN and SIMMS, JJ., concur.

HODGES, V. C. J., and IRWIN and BARNES, JJ., dissent.